

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

February 20, 2025

**VIA ECF**

**ANDREW J. LEVANDER**

Andrew.Levander@dechert.com
+1 212 698 3683

Hon. Pamela K. Chen, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Martin et al. v. Arbor Realty Trust, Inc. et al.*, Case No. 1:24-cv-05347-PKC-LKE (E.D.N.Y.)

Dear Judge Chen:

We represent Defendants Arbor Realty Trust, Inc. ("Arbor"), its chief executive officer, Ivan Kaufman, and its chief financial officer, Paul Elenio, (collectively "Defendants") in the above-captioned matter. We respectfully submit this letter pursuant to Rule 3A of Your Honor's Individual Practices and Rules to request a pre-motion conference to move to dismiss Plaintiffs' Amended Class Action Complaint (the "Amended Complaint") under Rule 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA").[1]

Arbor is headquartered in Uniondale, New York, and has been a premier provider of commercial and multifamily real estate loans for over twenty years. The Amended Complaint alleges that Arbor, along with Messrs. Kaufman and Elenio, misled investors by portraying that Arbor had prudent underwriting practices and internal controls, when the Company was supposedly engaged in "a fraudulent scheme to artificially inflate the Company's loan volume and reported earnings by abandoning or, at minimum, recklessly disregarding, [Arbor's] underwriting standards to complete high-risk bridge loans[.]" AC ¶ 10. But the sheer volume of block quotes and conclusory allegations spanning 224 pages does not withstand the rigorous pleading standards required under the PSLRA. *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018) ("zero plus zero is zero") (internal quotation marks omitted). As previewed below and to be addressed in Defendants' motion, Plaintiffs' pleading is based on nothing more than the self-serving stories concocted by short sellers and speculative allegations attributed to unidentified rank-and-file former employees. The Amended Complaint ignores the disclosed risks of investing in a company involved in the CLO business; that Arbor's independent auditor, Ernst & Young ("E&Y"), reviewed and approved Arbor's financial statements, risk-management practices, and internal controls and has never withdrawn its unqualified opinion on those financial statements; and that Arbor has never issued a purported corrective disclosure or restatement of its historical financial statements. Plaintiffs fail to plead (i) a false or misleading statement or omission, (ii) scienter, and (iii) loss causation—elements of a Section 10(b) or 20(a) Exchange Act claim. The Amended Complaint should be dismissed with prejudice.

## I.      Plaintiffs Fail To Plead Adequately A False Or Misleading Statement Or Omission

The Amended Complaint alleges that more than 100 statements in Arbor's securities filings and earnings calls from 2021 to 2024 were false and misleading because Defendants supposedly (1) made false or misleading statements regarding Arbor's loss reserves due to its alleged violation of its underwriting policies and practices, (2) misrepresented Arbor's performance by failing to disclose internal control weaknesses, and (3) violated GAAP by reporting a net income that was artificially inflated by understating its allowance for credit loss reserves. *See* AC ¶¶ 252–612. Plaintiffs rely almost entirely on self-serving short seller reports and allegations from anonymous former employees. But such reports must be read cautiously given their self-serving nature, *see In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (recognizing short sellers' "obvious motive to exaggerate the infirmities of the securities in which they speculate," and that factual allegations in short reports "must be considered with caution,"

---

[1] Defendants expressly reserve the right to raise additional arguments in their motion to dismiss.



and be "critically analyze[d]."") Doing so reveals that the reports in this case consist of mere opinions based on publicly available information and do not address, much less establish, the core conduct about which Plaintiffs complain. This alone justifies dismissal of the Amended Complaint. *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159–60 (S.D.N.Y. 2015) (dismissing complaint based almost exclusively on short seller report). Indeed, when allegations in short seller reports cannot be independently corroborated, "the risk of motivated reporting by the author of the short-seller report is twinned with the reliability concerns presented by anonymous sourcing." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020). Moreover, Plaintiffs' reliance on allegations from confidential former employees— many of whom worked at Arbor for a short time during the putative class period, were not employed in the underwriting department, and did not have direct interactions with either individual defendant—are insufficient to establish that Defendants made false statements or omitted material information. *See Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 224, 231–32 (S.D.N.Y. 2020) (dismissing claims relying upon confidential witnesses that did not establish "how and why" statements were false or omitted).

Likewise, Plaintiffs' allegations regarding loss reserves, internal controls, and GAAP violations are insufficient to plead an actionable statement of fact. Statements regarding loss reserves are inactionable opinions because the adequacy of the loss reserves "reflect[s] management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible." *Woolgar*, 477 F. Supp. 3d at 223 (internal quotation marks omitted). Moreover, here Plaintiffs' arguments are essentially that Defendants' statements regarding internal controls "must have been deficient because they **may** have failed to detect some weaknesses in its financial reports or disclosures." *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 315 (E.D.N.Y. 2023) (emphasis added). Such conclusory and vague allegations are insufficient to withstand dismissal where Plaintiffs "neither describe the internal controls that [the company] had in place, nor explain how or why they were deficient in a way that enabled the [harm] to occur." *Id.* at 315. Further, statements regarding general internal controls are mere puffery and therefore not actionable. *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 467 (E.D.N.Y. 2020). And Plaintiffs' allegations regarding Defendants' supposed GAAP violations are insufficient because "[a]ccounting or business judgments, even negligent ones, are not actionable." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 408 (S.D.N.Y. 2010). In any event, Defendants expressly disclosed that Arbor is involved in the CLO business and the extensive inherent risks of that business. *See, e.g.*, 2021 10-K at 15–18; 2022 10-K at 15–18. And their financial reporting and internal controls were reviewed and approved by an independent auditor and have never been restated. *See, e.g.*, 2021 10-K at 118; 2022 10-K at 119.

## II.    Plaintiffs' Allegations Fail To Give Rise To A Strong Inference Of Scienter

The Amended Complaint also fails to allege that Defendants acted with scienter. To plead scienter, "a mental state embracing intent to deceive, manipulate, or defraud," Plaintiffs must plead particularized facts "that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference" that is "at least as compelling as any opposing inference." *Tellabs Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 319, 323–24 (2007). Plaintiffs can do this through allegations of motive and opportunity to commit fraud or by alleging facts providing "strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F. 3d 131, 138 (2d Cir. 2001). The Amended Complaint does neither.

Plaintiffs' argument that the Individual Defendants were motivated "by a desire to maintain or increase executive compensation" is foreclosed by Second Circuit precedent. *Id.* at 139. Plaintiffs' alternative recklessness theory is equally untenable. As explained above, Plaintiffs parrot conclusory allegations from low-level former employees, but they fail to allege facts demonstrating that Defendants knew about "specific, contradictory information at the time they made the allegedly false and misleading statements." *Woolgar*, 477 F. Supp. 3d at 237. Plaintiffs' allegations involving GAAP and SOX certifications are nothing



Hon. Pamela K. Chen, U.S.D.J.
February 20, 2025
Page 3

more than "naked assertion[s] devoid of further factual enhancement." *Harris*, 135 F. Supp. 3d at 172. And courts in the Second Circuit reject Plaintiffs' core operations or corporate positions theory. *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019) ("majority rule" is "core operations allegations" are not "an independent means to plead scienter."). Any recklessness theory is further undermined because Arbor's "independent auditor . . . [was] unable to identify any material inaccuracies or weaknesses" in Arbor's financials. *Woolgar*, 477 F. Supp. 3d at 238. The more plausible, nonculpable inference is that Defendants made good-faith judgments regarding their business practices and internal controls that were audited by their longstanding auditor quarter after quarter, but short sellers motivated to short the stock one day launched a fanciful attack on Arbor's internal controls and financials. *Id.* at 240.

### III.    Plaintiffs Fail To Allege Facts Supporting Loss Causation

Furthermore, Plaintiffs fail to allege facts showing that the purported fraud caused their alleged losses. To establish loss causation, Plaintiffs claim that the three short seller reports and a Bloomberg news article announcing the commencement of a government investigation qualify as corrective disclosures that revealed the fraud to the market. To be a corrective disclosure, a report generally must contain new facts that were not previously known to the market. *Zhong Zheng*, 379 F. Supp. 3d at 177–78.

Here, in addition to Plaintiffs' failure to plead a corrective disclosure,[2] all three short seller reports acknowledge that they are merely "the authors' opinions, which have been based upon publicly available facts." Viceroy Research, 11/16/23 Report at 5; 12/05/23 Report at 5; and 05/09/24 Report at 14. By their own admission, these reports merely "express negative opinions . . . based on information that was already publicly available," so they cannot be "'corrective' for the purpose of pleading loss causation." *Cent. States, Se. and Sw. Areas Pension Fund v. Fed Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013). And the July 12, 2024, Bloomberg article simply announces the commencement of a government investigation without providing details or any new information, which is "insufficient to constitute a corrective disclosure for purposes of § 10(b)." *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013).

### IV.    Plaintiffs Fail To Allege Scheme Liability

To the extent that Plaintiffs attempt to allege scheme liability, they fail. Courts do not allow plaintiffs to "bypass the elements necessary to impose misstatement liability under subsection (b) by labeling the alleged misconduct a scheme rather than a misstatement." *In re AT&T DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 534 (S.D.N.Y. 2020) (internal quotation marks omitted).

*              *              *

For at least these reasons, the Amended Complaint fails to state a claim on which relief may be granted. Accordingly, Defendants respectfully request a pre-motion conference and permission to file a motion to dismiss the Amended Complaint with prejudice.

Sincerely,

*/s/ Andrew J. Levander*

Andrew J. Levander

cc:      All Counsel of Record (*via* ECF)

---

[2] Arbor has not issued a restatement and continues to stand by its financials and public disclosures. If the stock was inflated as Plaintiffs claim, it would still be so today. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 342–48 (2005).